COMMONWEALTH *vs.* WILLIAM HOGARTY & others.

Suffolk.   Nov. 23, 1885. — Feb. 23, 1886.   DEVENS & GARDNER, JJ., absent.

A person may be convicted upon a complaint, under the Pub. Sts. c. 99, § 10, as amended by the St. of 1883, c. 120, charging him with being present at an unlawful game, if the evidence at the trial shows that he was present at such a game, although it also tends to show that he was found playing the game.

COMPLAINT, under the Pub. Sts. c. 99, § 10, as amended by the St. of 1883, c. 120, charging the defendants with being present at a certain unlawful game.

At the trial in the Superior Court, before *Aldrich*, J., the evidence showed that the defendants were present at, and also tended to show that they were found playing, said game.

The defendants requested the judge to rule, that they could not be convicted, under this complaint, of the offence of being present, upon evidence which showed that they were participating in the game as players; and that the offences of playing an unlawful game and of being present at an unlawful game are distinct and separate offences under the statute. The judge declined so to rule, and instructed the jury that the defendants could be convicted upon evidence which showed that they were present at, although it also showed them to have been playing, the game; and that, although they were participating in the game, they were none the less present, in the sense of the statute.

The jury returned a verdict of guilty; and the defendants alleged exceptions.

*H. E. Swasey & G. R. Swasey,* for the defendants. The evidence in this case was equivocal. It could not be told which view of it the jury would take; whether they would find that these defendants were participating in the game, or that they were present merely as spectators. The defendants contended that a proper interpretation of the evidence showed that they were actually engaged in the game as players. This contention being warranted, they were entitled to a ruling and instruction applicable to such a fact, if found by the jury. Therefore, for the purposes of the present discussion, the case may be properly considered exactly as though the evidence was unequivocal, and showed the defendants to have been playing the game.

The question raised by the bill of exceptions is, whether the offence of playing an unlawful game and the offence of being present at an unlawful game are distinct and separate offences under the statute. If they are distinct, the defendants could not rightfully be convicted of one of these offences upon evidence showing them to have committed the other.

It is well established in this Commonwealth that mere gaming is not a crime. *Commonwealth* v. *Stahl,* 7 Allen, 303. *Commonwealth* v. *Tilton,* 8 Met. 232.

The purpose of the St. of 1834, *c.* 172, was the suppression of common gaming-houses as public nuisances, as its title indicates. Persons there found playing for money or otherwise, and the keeper or keepers of the same, were to be arrested. At this time the Legislature did not regard mere presence at a game as

of sufficient magnitude to call for notice. Without such enactment as to them, those merely present were not liable to punishment, because mere presence was not enough to make them principals, which they must have been, if anything, since the gaming itself was only a misdemeanor; in other words, mere presence, if the gaming itself had been a felony, would not have made them either principals in the second degree or accessories before the fact. This statute became, in substance, the Rev. Sts. c. 50, § 19.

The St. of 1857, c. 194, § 4, declared that "any person who shall be there found playing for money or otherwise, or aiding or abetting those playing for money or otherwise, shall forfeit, for every such offence, a sum not exceeding fifty dollars, to the use of the city or town." The main point of interest in this statute is that those persons aiding and abetting were expressly declared guilty; but so they were before the statute was passed, because such presence and action combined made them principal offenders in the game itself. The penalty imposed in this statute on aiders and abettors followed this principle, for it was the same as that imposed on the players themselves.

Up to this point, it is clear that the Legislature intended to punish only those who were technically guilty as principals, on common law principles.

In the Gen. Sts. c. 85, § 8, the provisions relative to those present aiding and abetting were omitted.

In 1869, a statute was passed which went beyond the St. of 1857, and which first made it a crime to be present, though nothing else were done. St. 1869, c. 364, § 1.

The Pub. Sts. c. 99, § 10, omitted the penalty imposed upon those present; and this omission was supplied by the St. of 1883, c. 120.

The above-recited legislation shows most clearly that the offence of presence did not exist until the St. of 1869, and that the statute then created an offence by declaring a thing to be such which it clearly was not at common law, and that offence is in reason and history a different one from that of physically participating in the game. The legislation since 1869 confirms the above position. The language is to receive a natural and reasonable construction.

*H. N. Shepard,* Assistant Attorney General, for the Commonwealth.

C. ALLEN, J. The history of the legislation, as given upon the defendants' brief, sufficiently shows that the offence of playing an unlawful game, and the offence of being present at such game, are not in all cases to be treated as identical, but that they may be distinct and separate offences. St. 1834, c. 172. Rev. Sts. c. 50, § 19. St. 1857, c. 194, § 4. Gen. Sts. c. 85, § 8. St. 1869, c. 364, § 1. Pub. Sts. c. 99, § 10. St. 1883, c. 120. There may be such a state of facts that either offence would not be proved by evidence which would be sufficient to prove the other. For example, if one were indicted for being present, and the evidence showed that he procured the game to be played by others in his absence, the charge would fail; although he might have been convicted of actually playing, since in misdemeanors all are to be treated as principals. So, on the other hand, if one were indicted for playing, and the evidence showed that he was merely present as a voluntary spectator, in no way participating in or aiding or encouraging the game, the charge would fail, although he might have been convicted of being present. It does not follow from this that a person would be guilty of two separate offences who should be present at an unlawful game and actually take part in it. It may well be questioned whether the Legislature intended to provide a double punishment in such case, or whether an indictment would be bad for duplicity which should charge in one count the being present and playing as part of one continuous act. See *Commonwealth* v. *Eaton,* 15 Pick. 273; *Commonwealth* v. *Nichols,* 10 Allen, 199; *Commonwealth* v. *Brown,* 14 Gray, 419, 430. Still less does it follow that the defendants could not be convicted of being present upon evidence showing that they were also playing. In such case, their acts being simultaneous, the government may well elect upon which charge it will proceed. If the defendants were actually playing, that fact only shows that less was charged against the defendants than might properly have been charged, if the government was confident of being able to prove the fact. It still remains true that, upon the evidence, they were guilty of everything that was charged against them; and it is not for them to object that their offence had in it another element which might have been

charged, and which was of a somewhat graver character.   In this Commonwealth, it has often been held that, if all the elements of the charge which is contained in the indictment are well supported by the evidence, a conviction may be had, although it appears that another offence would be equally well shown by the evidence; and the possible difficulty of procuring a conviction, if the rule were otherwise, was clearly pointed out by Mr. Justice Dewey, in *Commonwealth* v. *M'Pike*, 3 Cush. 181, 186. See also *Commonwealth* v. *Burke*, 14 Gray, 100 ; *Commonwealth* v. *Bakeman*, 105 Mass. 53 ; *Commonwealth* v. *Walker*, 108 Mass. 309, 314; *Commonwealth* v. *Dean*, 109 Mass. 349.

*Exceptions overruled.*