STATE OF IOWA, Appellee, v. HARRY L. TAYLOR, Appellant.

**Robbery:** INCLUDED OFFENSES: INSTRUCTIONS. Larceny and larceny
1  from the person are lesser offenses included in the crime of
robbery, and where the evidence is such that the jury may have
reasonable doubt as to the use of force, or may find that the
property was not taken from the person of prosecutor they
should be told that they may convict of either offense as the
evidence warrants.

**Same.** An instruction which makes an acquittal of the charge of
2  robbery depend upon an affirmative showing that defendant is
guilty of the crime of larceny from the person is erroneous.

*Appeal from Wapello District Court.—*HON. F. W.
EICHELBERGER, Judge.

TUESDAY, DECEMBER 15, 1908.

THE defendant was indicted for robbery as defined
in section 4753 of the Code. He entered a plea of not
guilty. Trial to a jury and verdict of guilty. Judgment
imposing a sentence to the reformatory at Anamosa for
a term not exceeding ten years. Defendant appeals.—
*Reversed.*

*W. W. Epps,* for appellant.

*H. W. Byers,* Attorney General, and *Chas. W. Lyon,*
Assistant Attorney General, for appellee.

EVANS, J.—At the time of the alleged offense, September 20, 1907, the defendant was a boy seventeen years of age. The prosecuting witness Joseph Aldridge was an old man about eighty years of age. They met at Gallager's saloon in Ottumwa. The defendant, with two other young men, was already present at the saloon when Aldridge came there. The evidence tends to show that Aldridge joined them in a drinking spree, purchasing for them and himself one or two cans of beer, and that they all became more or less intoxicated and engaged in more or less hilarity. Aldridge had with him a watch, and the evidence is quite conclusive that the defendant in some manner stole the watch, and shortly afterward left the saloon. He carried the watch to a pawnshop, and pawned it for $3. He was immediately arrested, and after his arrest informed the officers where the watch was, and went with them to the pawnshop to obtain it. In what manner the defendant obtained the watch does not very clearly appear from the testimony. As to whether he took it from the person of Aldridge, and, if from the person, whether he took it by stealth or by force and violence, is left in much uncertainty. We quote from the testimony of Aldridge as follows: "I lost my watch that day. He wanted to know the time of day. I took it out, and he took it off of me. He left me a piece of chain. Here it is. . . . He wanted to know what time it was. I took it out and showed him, and he took hold of it, and snapped it off some way. I don't know how he got it off. He took hold of the watch and saw what time it was. I next saw him at the police station." On cross-examination he testified as follows: "The reason I think the other fellows did not take the watch, I look around and their back was to me, and I told them that fellow had took my watch, and we started out to hunt him. I got the watch out of my pocket myself. I had it in my hand and handed it to him." The foregoing is all the testimony of

the prosecuting witness as to the manner in which the alleged larceny was committed. The State's witness Orendorf was one of the young men present. He testified that he heard Harry asked Aldridge what time it was. "Along about 10 or 15 minutes after that, he said to me, 'Somebody got my watch.' Then he had me to go with him to look around." He also testified that he heard Aldridge say, "He took my watch," and he also heard him say, "He grabbed my watch." No other witnesses attempted to testify on that subject.

I.   In the submission of the case to the jury, the court gave instructions numbered 4 and 5 as follows:

 (4) The crime charged in this indictment is robbery, which is where one person takes, steals and carries away from the person of another, with force and violence, any

*1. ROBBERY: included offenses: instructions.* personal property which is the subject of larceny. To constitute this crime, the stealing must be from the person of another, and it must be accomplished by force and violence. There need not be great force or violence, but there must be some. If the article is so attached to the person or his clothing as to resist its removal and create a resistance, however slight, it is sufficient. In this case, therefore, if you find from the evidence, beyond a reasonable doubt, that in this county, on the 26th day of September, 1907, J. A. Aldridge took his watch out of his pocket and held it in his hand, the chain being still so attached to it and to his clothing, and that at such time and place the defendant asked Aldridge what time it was, and that Aldridge then and there pulled his watch out of his pocket and held it in his hand, the chain being still so attached to it and to his clothing, and that when he was so holding it in his hand, the defendant snatched it away from him, and from the chain to which it was attached, and ran away with the watch intending to steal it, you should find the defendant guilty. If you do not so find you should acquit him.   (5) If you believe from the evidence that at the time and place mentioned in the indictment, defendant asked Aldridge what time it was, and that Aldridge pulled his watch out of his pocket

and held it in his hand, detached from his person, otherwise or not, at the time, fastened to his clothing in any way, and that while he was thus holding the watch in his hand so detached from his clothing, the defendant, without force or violence of any kind or degree, took, stole and carried away the watch, this would not constitute robbery, but larceny only, with which crime the defendant is not charged. Hence if you so find, you should return a verdict of not guilty.

At the same time, and before the submission of the case to the jury, the defendant requested the court to instruct the jury as to the lesser included offenses of larceny from the person and larceny. He submitted to the court instructions 1, 2 and 3 as follows, and asked that the same be given: "(1) You are instructed that the crime of robbery as charged in this indictment also includes the crime of larceny from the person and larceny. (2) If from the evidence you are not convinced beyond a reasonable doubt as defined in these instructions that the defendant is guilty of the crime of robbery then you should next ascertain whether or not from the evidence he is guilty of the crime of larceny from the person, and should you not find him guilty of either robbery or larceny from the person, then you may ascertain whether or not he is guilty of the crime of larceny as herein defined. (3) And should you not find him guilty of robbery or larceny from the person and find him guilty of larceny, then you should from the evidence find the value of the property stolen." These were refused by the court, and to this refusal defendant saved proper exceptions.

Counsel for the State concede that larceny and larceny from the person are lesser offenses included in the offense of robbery. It has been so held repeatedly by this court. See *State v. Graff*, 66 Iowa, 483; *State v. Mikesell*, 70 Iowa, 178; *State v. Reasby*, 100 Iowa, 237. That it was the right of the defendant to have such instructions given, if the state of the evidence warranted it, is also

well settled. *State v. McCarty,* 73 Iowa, 51; *State v. Neis,* 68 Iowa, 469; *State v. Walters,* 45 Iowa, 390; *State v. Hathaway,* 100 Iowa, 225. The contention of counsel for the State is that the state of the evidence was not such as to warrant giving any instructions on the subject of included lesser offenses. The evidence in the record will not justify this contention. The crime of robbery, as defined in section 4753, of the Code, includes three elements, as follows: (1) Larceny; (2) larceny from the person; (3) the accomplishment of such larceny by force and violence or by putting in fear. If there was a reasonable doubt in the minds of the jurors as to the element of force and violence, it was their duty to find the defendant guilty of no greater offense than larceny from the person. If there was a reasonable doubt in the minds of the jurors under the evidence as to whether the watch was taken from the person of the prosecuting witness, it was their duty to find the defendant guilty of no greater offense than larceny. Granting that the evidence of the prosecuting witness was sufficient, if believed, to warrant the jury in finding the element of force and violence, the jury was not bound to so find. The jury might properly hesitate to find such fact, because of the indefinite and unsatisfactory character of the evidence as to that particular question. In other words, the evidence in proof of the element of force and violence was not so strong as the evidence of the larceny or of larceny from the person. It follows that the jury could consistently have failed to find the defendant guilty of robbery, and yet have found him guilty of larceny, or of larceny from the person.

In the fifth instruction given by the court, it is assumed that the state of the evidence is such that the jury might find that the offense committed was larceny from the person. But the effect of that instruction was to instruct the jury that such offense was not an included offense.

There is the further error in such instruction that it made the acquittal of the defendant dependent upon an affirmative showing that he was guilty of larceny from the person.  If the court had been correct in assuming that larceny from the person was not an included offense, then the defendant would have been entitled to an acquittal, if there was a reasonable doubt in the minds of the jurors, as to the element of force and violence.  And this would be so even though the jurors might not be satisfied but that force was used.  The trial court should have instructed the jury that, if it should find beyond a reasonable doubt that the defendant was guilty of larceny from the person of the prosecuting witness, but had a reasonable doubt whether it was accomplished by force and violence or by stealth, the defendant could be found guilty only of larceny from the person.  It was not necessary that the jury find that the defendant was not guilty of the higher offense.

*2. SAME.*

The instructions asked by the defendant, or their equivalent in substance, should have been given.  The judgment of conviction must therefore be *reversed.*